UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR M. BOLANO,<br><br>Defendant. | Case No. 5:14-cv-03939-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 28] |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") has moved for the entry of default judgment against defendant Sergio Moreira Martinez individually, and d/b/a Palenque Night Club a/k/a Palenke ("Defendant"). Plaintiff seeks damages for Defendant's alleged unlawful interception and broadcast of a boxing match at Defendant's establishment. The Court finds this matter suitable for submission without oral argument and hereby VACATES the motion hearing set for July 30, 2015. Civ. L.R. 7-1(b). For the following reasons, the Motion for Default Judgment is GRANTED.

**I.   BACKGROUND**

Plaintiff is a commercial distributor and licensor of sporting events. First Amended Compl. ("FAC") ¶ 16, ECF 15. By contract, Plaintiff secured the domestic commercial exhibition rights for the broadcast program "*'The One' Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program*" ("Program"), which was telecast nationwide on Saturday, September 14, 2013. *Id.* ¶ 14. In order to lawfully air the Program in a commercial setting, commercial entities were required to enter into a sublicensing agreement with Plaintiff and pay the associated licensing fees. *Id.* ¶ 15. The interstate transmission of the Program for commercial purposes was made available only to those licensees. *Id.*

On September 14, 2013, investigator Nathan Tate observed the alleged unlawful exhibition of the Program at Defendant's commercial establishment, Palenque Night Club, located in Castroville, California. Decl. of Nathan Tate at 2, ECF 28-3. Based on Tate's observations, Plaintiff alleges that Defendant intercepted the Program unlawfully and intentionally exhibited it for the purpose of "direct and/or indirect commercial advantage and/or private financial gain." FAC ¶ 18.

In his declaration, Tate states that Palenque Night Club has a capacity of approximately 190 people. Tate observed one fifty-inch television located on the wall straight back from the entrance of the restaurant. In the five minutes that he spent in the night club, Tate conducted three head counts of patrons inside the establishment, counting approximately ninety patrons each time. Tate's declaration does not indicate how many of such patrons were actually watching the Program. Tate further avers that there was no visible cable box and that the establishment does not have a satellite. He describes the establishment as a "bar in the middle of town [with] apartments next to it." Tate's declaration indicates that he was not required to pay to enter the establishment. Tate Decl. at 2. There are no allegations of increased food or drink prices during the Program. Plaintiff also does not allege that Palenque is a repeat offender of the alleged unlawful conduct. *See generally* FAC.

Plaintiff filed the instant lawsuit on August 29, 2014, originally naming Victor M. Bolano as the sole defendant. *See* Compl., ECF 1. Plaintiff amended its complaint on February 13, 2015 to substitute in Sergio Moreira Martinez as defendant. Plaintiff has alleged violations of the Federal Communications Act, 47 U.S.C. § 605; Cable and Television Consumer Protection Act, 47 U.S.C. § 553; California Civil Code § 3336 (conversion); and California Business and Professions Code § 17200, *et. seq*. ("UCL").[1] Defendant has failed to appear or otherwise respond to the Summons and First Amended Complaint within the time prescribed by the Federal Rules of Civil Procedure. On May 11, 2015, Plaintiff filed a request for a clerk's entry of default. ECF 19. The Clerk of the Court entered default against Defendant on May 26, 2015. ECF 23.

---

[1] In Plaintiff's Motion for Default Judgment, Plaintiff does not request relief in connection with its UCL claim and therefore no relief will be granted under this statute.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F. 2d 1089, 1092 (9th Cir. 1980).

In exercising its discretion to enter default judgment, a district court considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) ("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. In considering these factors after a clerk's entry of default, the court takes all well-pleaded factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The Court may, in its discretion, consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Id.*

## III. DISCUSSION

### A. *Eitel* Factors

Six of the seven *Eitel* factors weigh in favor of default judgment. In respect to the first factor of prejudice, denying Plaintiff's request for default judgment would be prejudicial because Plaintiff would be left without a remedy as a result of Defendant's refusal to litigate this action. Considering the merits of Plaintiff's substantive claims and the sufficiency of the complaint together (factors two and three), Plaintiff's substantive claims appear meritorious, and its complaint is sufficiently pled. Plaintiff has stated the applicable laws pursuant to which the Court may provide relief and alleged that Defendant violated 47 U.S.C. §§ 605 and 553 and California Civil Code § 3336. The facts alleged concerning Defendant's conduct, taken as true, support the claim that Defendant has violated one or more sections of the cited statutes.

As to the fifth and sixth *Eitel* factors, Defendant has failed to respond to this action despite

1   Plaintiff's satisfaction of all notice requirements. *See* Summons, ECF 16; Proof of Service, ECF
2   18. As such, there is no dispute of material fact because Defendant has not responded (factor
3   five). There is also nothing in the record to indicate that Defendant's default is a result of
4   excusable neglect (factor six). Finally, although federal policy favors decisions on the merits,
5   Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant
6   refuses to litigate. *J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030, 2014 WL 121711, at
7   *2 (N.D. Cal. Jan. 13, 2014). Therefore, this general policy is outweighed by the more specific
8   considerations in this case, and the seventh *Eitel* factor also weighs in favor of default.

9   With respect to the sum of money at stake in this action (fourth factor), Plaintiff's request
10  for maximum statutory damages weighs against granting default judgment, as the amount
11  requested appears disproportionate to the harm alleged: a first time offender who did not charge an
12  entrance fee and did not show the broadcast to a packed house. However, a disproportionate
13  damages request is not enough on its own to bar default judgment, as it may be addressed by the
14  Court in deciding what damages should be awarded, assuming that a default judgment is otherwise
15  appropriate. *Joe Hand Promotions, Inc. v. Mujadidi*, No. C-11-5570, 2012 WL 3537036, at *3
16  (N.D. Cal. Aug. 14, 2012). This consideration is therefore outweighed by the other *Eitel* factors
17  favoring an entry of default judgment.

18  Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

### B. Damages

20  In its complaint, Plaintiff requested statutory damages pursuant to 47 U.S.C.
21  § 605(e)(3)(C)(i)(II) for $10,000 and § 605(e)(3)(C)(ii) for $100,000 in enhanced damages. FAC
22  ¶ 22. Plaintiff further requested statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii) for $10,000
23  and § 553(c)(3)(B) for $50,000 in enhanced damages, but removed this request when it moved for
24  default judgment. *Id.* ¶ 27; *see generally* Pl.'s Mot., ECF 28. The Court finds, for the reasons
25  stated below, that damages should be awarded pursuant to § 553 and not § 605.[2] Plaintiff also
26  seeks $4,200 in conversion damages under California Civil Code § 3336, the amount Defendant

---

[2] All of Plaintiff's arguments for damages under § 605 will now be considered in support of damages under § 553.

4

allegedly would have been required to pay had Defendant licensed the Program from Plaintiff. Pl.'s Mot. 20; Pl.'s Aff. ¶ 8, ECF 28-4.

### i. Statutory Damages

Plaintiff seeks damages under 47 U.S.C. § 605, but the facts alleged and proven in this case show that damages are more appropriate under 47 U.S.C. § 553. Section 605 prohibits "radio" or satellite interception, while § 553 prohibits cable interception. *See* 47 U.S.C. §§ 605, 553. Section 605 also provides for higher penalties than does § 553. Plaintiff admits that it cannot determine the precise means that Defendant used to receive the Program. Pl.'s Mot. 8. Plaintiff argues (with little legal support) that under these circumstances, it is "inherently reasonable" to allow recovery under § 605. *Id*. The Court disagrees. Plaintiff has not provided any evidence to indicate that Defendants received the Program via satellite and, in fact, its investigator stated that he did not see a satellite dish on the property. *See* Tate Decl. at 2. Under similar circumstances, courts typically apply § 553 under the reasoning that interception by cable is a much more likely scenario (and therefore a more permissible inference) than interception by way of a concealed satellite dish. *J & J Sports Prods., Inc. v. Ayala*, No. 5:11-CV-05437-EJD, 2012 WL 4097754, at *2 (N.D. Cal. Sept. 17, 2012) (collecting cases); *J & J Sports Prods., Inc. v. Concepcion*, No. C 10-05092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011); *J & J Sports Prods., Inc. v. Juanillo*, No. C 10-01801 WHA, 2010 WL 5059539, at *2 (N.D. Cal. Dec. 6, 2010); *see also J & J Sports Prods., Inc. v. Gonzalez*, No. 14-CV-03932-VC, 2015 WL 1924628, at *1 (N.D. Cal. Apr. 24, 2015) (same). Accordingly, the Court will assess damages under § 553.

The Cable and Television Consumer Protection Act, 47 U.S.C. § 553, prohibits a person from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Under § 553(c)(3)(A), an aggrieved private party may elect to recover actual damages or "an award of statutory damages . . . in a sum of not less than $250 or more than $10,000 as the court considers just." Plaintiff has elected to pursue maximum statutory damages of $10,000. FAC ¶ 27(a).

In determining what amount of statutory damages is "just," courts consider a number of

factors, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Prods., Inc. v. Sorondo*, No. 1:11-CV-00411-AWI, 2011 WL 3917391, at *5-6 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman,* 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000)). Taking these factors into consideration, the Court finds an award of maximum statutory damages under § 553 to be inappropriate in this case. Here, Defendant is a first time offender and displayed the Program on only one fifty-inch television in a half empty bar that did not charge a cover fee. Tate Decl. 2. In the five minutes that Plaintiff's investigator spent in the establishment, he observed at most ninety people in a bar that can accommodate 190 and did not state whether any of the patrons were watching the Program. *Id*. There is no evidence that Defendant either increased food or drink prices during the exhibition of the Program or promoted his bar by advertising the Program. In light of the limited evidence presented and the discretion afforded to the undersigned, the Court awards Plaintiff the statutory minimum of $250 in damages under § 553(c)(3)(A)(ii).

### ii. Enhanced Damages

The Cable and Television Consumer Protection Act also affords courts the discretion to award enhanced damages up to $50,000 upon finding that the violation "was committed willfully and for the purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(A)(ii)(B). The statute is conjunctive and therefore the Plaintiff must provide the Court with sufficient evidence to support a finding that Defendant acted both willfully and for the purpose of obtaining commercial advantage or private financial gain.

Plaintiff argues that it is "clearly established" that actions in cases such as these are "willful." Pl.'s Mot. 14. Plaintiff would like the Court to agree with other district courts that have inferred willfulness by reasoning that the unlicensed commercial display of a broadcast necessarily involves the defendant taking some affirmative action to intercept the broadcast signal, thus exhibiting willful conduct. *Id.* at 14-15. The Court acknowledges the merit of Plaintiff's position in the abstract, but finds no evidence here from which it would be reasonable to infer willfulness.

The experience from Plaintiff's enforcement actions in this and other judicial districts teaches that the willful descrambling of encrypted signals is not the only reasonable inference from the mere fact that a commercial establishment received and displayed one of Plaintiff's programs without first licensing the rights from Plaintiff. Indeed, many courts have found that where a defendant is not aware that it is unlawful to order one of Plaintiff's programs through a residential cable service to show at his commercial establishment, there is no willfulness in the "unauthorized" receipt of the program at a commercial establishment.[3] *See Joe Hand Promotions, Inc. v. Albright*, No. CIV. 2:11-2260 WBS, 2013 WL 2449500, at *6-8 (E.D. Cal. June 5, 2013); *J & J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 918 (N.D. Cal. 2012); *but see J & J Sports Prods., Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009).

Plaintiff has provided no evidence that would support an inference of willfulness as opposed to unknowing violation. As the Court has already observed, Defendant's conduct is not particularly egregious in the respects that courts have consistently considered when determining whether to award enhanced damages. Defendant is a first time offender, only had the Program displayed on one fifty-inch television in a half empty room and did not charge a cover fee. There is no evidence that Defendant either increased food or drink prices during the exhibition of the Program or promoted Palenque Night Club by advertising the Program. Consistent with the lack of evidence of repeated violations by Defendant is the fact that there is no evidence that Plaintiff ever notified Defendant that he needed to license the broadcast rights for the Program from Plaintiff. It may very well be the case that this action is enough of a deterrent for Defendant, now that he has notice of the need to license programs from Plaintiff. In sum, it is Plaintiff's burden to establish willfulness and Plaintiff has offered no evidence nor conducted any analysis of the specific facts in this case on this point sufficient to warrant an award of enhanced damages. As such, Plaintiff has failed to demonstrate entitlement to enhanced damages and the Court declines to award such damages here. *See J & J Sports Prod., Inc. v. Montano*, No.1:12-cv-00738-AWI-

---

[3] Section 553 provides a safe harbor from liability for those who receive a transmission with authorization by a cable operator. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 348-50 (5th Cir. 2014).

1  SAB, 2013 WL 1680633, at *4-7 (E.D. Cal. April 17, 2013) (denying enhanced damages where

2  Plaintiff failed to investigate the method of interception utilized by the defendant); s*ee also J & J*

3  *Sports Prods., Inc. v. Rumors Inc.*, No. CIV. CCB-14-2046, 2014 WL 6675646, at *4 (D. Md.

4  Nov. 21, 2014) (declining to award enhanced damages in light of Plaintiff's "recalcitrance" in

5  consistently requesting maximum statutory damages in nearly identical cases despite repeated

6  judicial admonitions that there must be evidence of egregious willfulness by the defendant).

7  For the foregoing reasons, the Court DENIES Plaintiff's request for enhanced damages.

### iii. Conversion

9  Plaintiff requests $4,200 in damages for conversion under California Civil Code § 3336.

10  Pl.'s Mot. 20.  The Ninth Circuit has held that a claim for conversion in California has three

11  elements: "ownership or right to possession of property, wrongful disposition of the property right

12  and damages."  *G.S. Rassmussen & Associates, Inc. v. Kalitta Flying Service Inc.*, 958 F.2d 896,

13  906 (9th Cir. 1992).  Plaintiff has established that it secured the domestic commercial exhibition

14  rights to broadcast the Program.  FAC ¶ 14.  Plaintiff has properly alleged that Defendant

15  unlawfully exhibited the Program on September 14, 2013 and that Plaintiff suffered damages from

16  being denied a license fee from Defendant.  *Id.* ¶ 11.  Therefore, the three elements are met.[4]

17  California Civil Code § 3336 states that a plaintiff is entitled to the value of the property at

18  the time of conversion.  Here, Plaintiff states that $4,200 is the amount Defendant would have

19  been required to pay Plaintiff had he lawfully licensed the Program.  Pl.'s Mot. 20.  Plaintiff has

20  provided its "rate card" for the Program showing that an establishment of Palenque Night Club's

21  size would be required for pay $4,200 to license the Program.  Pl.'s Aff. ¶ 8; *id.* Exh. 2.  This is

22  sufficient to prove the asserted value of the license.  Accordingly, the Court awards $4,200, the

---

[4] The Court observes that courts are divided regarding (1) whether the tort of conversion even applies to Plaintiff's exclusive commercial distribution right, which is an intangible, non-rivalrous good; and (2) whether conversion damages are impermissibly duplicative of statutory damages under § 553, particularly in light of the fact that the statute permits an election between statutory and actual damages.  *See G & G Closed Circuit Events LLC v. Govan*, No. C 13-05488 SI, 2014 WL 2194520, at *2 (N.D. Cal. May 23, 2014) (collecting cases regarding conversion); *Ayala*, No. 5:11-CV-05437-EJD, 2012 WL 4097754, at *4 and n.6 (N.D. Cal. Sept. 17, 2012) (noting the conflicting positions regarding conversion but awarding conversion damages).  In the absence of opposition briefing, this Court follows district precedent awarding conversion damages.

value of the Program at the time of conversion.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment is GRANTED. Plaintiff shall recover $250 in statutory damages and $4,200 in damages for conversion. Plaintiff's request for enhanced damages is DENIED. A separate default judgment shall issue and the Clerk of the Court shall close the case file.

**IT IS SO ORDERED.**

Dated: July 24, 2015

_____
BETH LABSON FREEMAN
United States District Judge